*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

QUINCY DEMETRIC JONES,

    Plaintiff/Counterdefendant-Appellee,

v

MAKIAH HOPE BEVER, also known as MAKIAH ROSS,

    Defendant/Counterplaintiff-Appellant,

and

RYLAND BEVER,

    Defendant/Counterplaintiff.

UNPUBLISHED
December 18, 2025
1:23 PM

No. 375884
Midland Circuit Court
LC No. 23-002248-DC
    20-007452-DP

Before: SWARTZLE, P.J., and O'BRIEN and BAZZI, JJ.

PER CURIAM.

This case involves a child and her parentage, conception, and best interests under the Revocation of Parentage Act (RPA), MCL 722.1431. When the child was born, appellant Makiah Bever, formerly Makiah Ross, indicated that her then-boyfriend and now husband was the child's father, and he signed the acknowledgment of parentage. Appellee Quincy Jones then alleged that he was the child's biological father. After a DNA test indicated that Jones was the biological father, the trial court's order of filiation revoked Bever's husband's acknowledgment of parentage and established Jones as the child's father. Because the trial court's factual findings were insufficient for appellate review, we vacate and remand for further proceedings.

## I. BACKGROUND

In March 2017, Bever and her now-husband were in a romantic relationship and worked at the same place of business. Jones was also one of their coworkers. Bever asserted that, before March 2017, she was friendly with Jones and even associated with him outside of work on one occasion, but she denied that they were anything more than friends. It is not disputed that Bever

agreed to meet Jones outside a closed restaurant in March 2017, but Bever contended that she believed that they were just going to talk, consistent with the previous time they had associated outside of work. It is also not disputed that Bever and Jones had sexual intercourse on this occasion, but the parties disagree on the circumstances. Bever alleged that Jones raped her, following which she left as quickly as possible and thereafter limited her interactions with Jones; she did not report the incident to law enforcement or to her then-boyfriend because she was scared and "wanted to forget that anything had happened." Jones has a different perspective and claims that the encounter was consensual and that he was in an intimate relationship with Bever for months, including having intercourse on multiple occasions until Bever was eight months pregnant.

Several weeks after the March 2017 incident, Bever discovered that she was pregnant and contacted Jones to confirm that he had a vasectomy. Bever also contemplated an abortion because she was afraid Jones might be the father, but decided to give birth to the child, and her husband signed the acknowledgment of parentage. When the child was less than a year old, Jones asked Bever for a DNA test. Bever delayed the testing because she wanted Jones to leave her and her family alone. Jones eventually told Bever's husband that he might be the child's father, at which time Bever told her husband that Jones had raped her. When the child was approximately two years old, Bever blocked Jones on her phone.

Jones commenced this action when the child was just under three years old. A genetic test was finally obtained, showing that Jones was the child's biological father. The trial court entered a stipulated order revoking Bever's husband's acknowledgment of paternity and establishing Jones as the child's father. That order was then set aside because the trial court determined that Bever was a necessary party and was absent as a party in the action.

Bever filed a counter-claim for acknowledgment of paternity, arguing that Jones was ineligible to be the child's father under MCL 722.1445 because the child was conceived as a result of nonconsensual sexual penetration. She also moved for relief from the stipulated custody order that the trial court had entered because the order establishing Jones as the father was set aside. After a hearing, the trial court denied Bever's motion for relief from judgment. In its opinion, after summarizing the parties' testimony and evidence, the trial court stated that, based on the testimony presented, it did not find by clear and convincing evidence that the child was conceived as a result of nonconsensual sexual penetration. It therefore reinstated the order that Jones was the child's father.

Bever then moved for the trial court to reconsider its order, arguing that the trial court erred by not making a best-interest analysis under MCL 722.1443(4) when reinstating its order. The trial court denied Bever's motion for reconsideration, finding that it did not err when it did not make findings under MCL 722.1443(4) because it was simply reinstating the stipulated order, not refusing to enter an order. Because Bever requested further proceedings to determine the child's best interests, the trial court nevertheless examined the child's best interest in its decision on the motion for reconsideration. The trial court acknowledged that Jones had sought to be part of the child's life and that Bever prevented Jones's involvement, allegedly because of the sexual assault that she did not report. Further, the trial court acknowledged that "there is undoubtedly a strong relationship" between the child and Bever's husband and that at seven years old, introducing Jones as her father would likely be "disruptive to her life." But, the trial court found that it would be in

the child's best interest to be united with Jones, emphasizing that Jones sought to be a part of the child's life only to be hindered by Bever.

The trial court entered an order of filiation in favor of Jones, and this appeal followed.

## II. ANALYSIS

## A. THE REVOCATION OF PARENTAGE ACT

Under the RPA, an alleged father may file an action for revocation of an acknowledgment of parentage within 3 years after the child's birth or within 1 year after the acknowledgment of parentage was signed. MCL 722.1437(1). If the alleged father proves, by clear and convincing evidence, that he is the child's father, then the trial court may make a determination of paternity and enter an order of filiation. MCL 722.1445(1). Clear and convincing evidence must lead the trier of fact to "a firm belief or conviction as to the truth of the allegations sought to be established, evidence so clear, direct and weighty and convincing as to enable the factfinder to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue." *In re Martin*, 450 Mich 204, 227; 538 NW2d 399 (1995) (cleaned up).

But, a determination of paternity or order of filiation under MCL 722.1445(1) can be impeded by the mother if she brings an action under MCL 722.1445(2) to vindicate "the Legislative policy determination that rapists should not have parental rights to the children they father through rape." *Blackman v Millward*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 367240); slip op at 9-10. If the mother, after a fact-finding hearing, proves by clear and convincing evidence that the child was conceived as a result of nonconsensual sexual penetration, then the trial court must do one of the following: (a) revoke an acknowledgment of parentage for an acknowledged father; (b) determine that a genetic father is not the child's father; (c) set aside an order of filiation for an affiliated father; or (d) make a determination of paternity regarding an alleged father and enter an order of revocation of parentage for that alleged father. MCL 722.1445(2); MCL 722.1443(2).

The trial court "may refuse to enter an order setting aside a parentage determination, revoking an acknowledgment of parentage, [or] determining that a genetic father is not a child's father." MCL 722.1443(4). But to do so, it must find evidence that the order would not be in the best interests of the child, considering the factors in MCL 722.1443(4), including the child's age and relationship with the alleged father. Any refusal to enter such order must be accompanied by the trial court's reasoning on the record. *Id.*

## B. BEST INTERESTS

Bever argues that the trial court was required under MCL 722.1443(4) to hold an evidentiary hearing to determine the child's best interest. The Court reviews for clear error a trial court's factual findings under the RPA and reviews de novo the statutory construction of the RPA. *Sprenger v Bickle*, 307 Mich App 411, 417-418; 861 NW2d 52 (2014). Clear error occurred if the Court "is firmly and definitely convinced that a mistake was made." *Id.* at 418. Appellate review of a trial court's factual findings is not limited to clear error if the trial court's finding was

influenced by an incorrect view of the law or an erroneous application of the law to the facts. *Beason v Beason*, 435 Mich 791, 804-805; 460 NW2d 207 (1990).

The trial court believed it was not required to make best-interest findings because it was not refusing to enter an order, but instead was reinstating the order that Jones was the father. But the trial court overlooked that Bever had requested that the trial court determine that Jones, the child's genetic father, was not the child's father under MCL 722.1443(2)(b). In denying her request, the trial court was also effectively refusing to set aside an order of filiation or paternity that established Jones as the legal father, MCL 722.1443(2)(c). The trial court essentially refused to enter Bever's requested orders without a finding of best interests and without stating its reasons on the record.

Although the trial court did make best-interest findings, those findings were made in its decision on Bever's motion for reconsideration while assuming that such findings were unnecessary. Although MCL 722.1443 does not mention an evidentiary hearing, the trial court must make a finding based on evidence that the order would not be in the best interests of the child while considering the factors in MCL 722.1443(4), and must state the reasons for refusing to enter such an order on the record. Generally, a trial court's factual findings do not need to be detailed, *Ford Motor Co v Dep't of Treasury*, 313 Mich App 572, 589; 884 NW2d 587 (2015), but, if the explanation is not sufficient to facilitate meaningful appellate review, then remand is proper for more complete and specific findings of facts. *Ray v Mason Co Drain Comm'r*, 393 Mich 294, 302; 224 NW2d 883 (1975); *Woodington v Shokoohi*, 288 Mich App 352, 357; 792 NW2d 63 (2010).

Here, the trial court's analysis of the child's best interests, made during a decision on reconsideration and while assuming that such analysis need not be made, did not provide sufficient findings of fact and statements of reasoning for this Court to review its decision. As a reminder, in "cases involving children, the focus is always on their best interests." *Helton v Beaman*, 304 Mich App 97, 119-120; 850 NW2d 515 (2014) (K.F. KELLY, J., concurring); *Helton v Beaman*, 497 Mich 1001; 861 NW2d 621, 622 (2015) ("For the reasons explained in section II of the concurring opinion, . . ."). Although the trial court, in its best-interests analysis, may consider other factors that it deems appropriate and "that may affect the equities arising from the disruption of the parent-child relationship," the other factors in MCL 722.1443(4) emphasize the child: the child's relationships, the child's age, and the harm that may result to the child.

The trial court's focus was on Jones's desire to be involved in the child's life and Bever's attempts to prevent his involvement; such analysis may be relevant but does not alone establish that it is in the child's best interests not to set aside the determination that Jones is the father. When focusing on the child, the trial court mentioned aspects that would negate best interests if Jones was left as the father. The trial court mentioned that there was "undoubtedly a strong relationship between" the child and Bever's husband, that the child was then seven years old, and that the child would likely experience disruption by the change in father. But it then concluded that it was in the child's "best interests to be reunited with her biological father who has been fighting to be involved in her life since shortly after she was born." The trial court's opinion did not meet the MCL 722.1443(4) requirements for findings of fact or statements of reasons. We therefore vacate the trial court's order of filiation and remand the matter for a proper analysis of the child's best interests.

## C. NONCONSENSUAL SEXUAL PENETRATION

Further, Bever argues that the trial court erred in its factual findings regarding nonconsensual sexual penetration. Again, we review for clear error the trial court's factual findings. *Sprenger*, 307 Mich App at 417-418. Under MCL 722.1445(2), if Bever proved "by clear and convincing evidence that the child was conceived as a result of nonconsensual sexual penetration," then the trial court was required to "determine that a genetic father is not the child's father," "set aside an order of filiation for an affiliated father," or "make a determination of paternity regarding an alleged father and enter an order of revocation of parentage for that alleged father." MCL 722.1445(2).

The trial court did not explain why it found that Bever failed to prove that the child was conceived by nonconsensual sexual penetration. Its analysis was simply a continuation of the background section without applying the law to any findings of fact. The trial court simply concluded that it did not find by clear and convincing evidence that the child was conceived as a result of nonconsensual sexual penetration based "upon the testimony presented." Although we defer to the trial court's superior ability to evaluate the credibility of the individuals who appeared before it, the trial court may not "insulate findings from review by denominating them credibility determinations." *Beason*, 435 Mich at 804 (cleaned up).

It appears that the trial court primarily found Bever not credible based on Facebook communications between Jones and Bever that, in the trial court's words, "clearly rebuts [Bever's] claim that she had no contact with Jones after the alleged March 2017 incident." A review of the record on appeal does not seem to show that Bever made a claim that she had no contact with Jones. Instead, Bever testified that she did not socialize with Jones further, but she continued to interact with Jones at work only as needed and contacted Jones to confirm whether he had a vascectomy. But, it is unclear from the trial court's opinion exactly its reasonings and findings.

Like the trial court's findings of best interests, the Court cannot review the trial court's findings and decision relating to the nonconsensual sexual penetration based on the record made. Because the Court is an error-correcting court, not a fact-finding court, *Apex Laboratories Int'l Inc v City of Detroit*, 331 Mich App 1, 10; 951 NW2d 45 (2020), we will not make this determination ourselves, as Bever requests, but instead, the trial court must make the decision on remand.

## III. CONCLUSION

The trial court's order of filiation is vacated and the matter is remanded. On remand, if the trial court again finds that Bever has not proved by clear and convincing evidence that the child was conceived as a result of nonconsensual sexual penetration, then it must take evidence and make factual findings regarding the child's best interests with a proper focus on the child's interests rather than on Jones's interests. *In re Moss*, 301 Mich App 76, 87-88; 836 NW2d 182 (2013). When the trial court makes its decision, its findings need not be overly detailed, *Ford Motor Co*, 313 Mich App at 589, but should be sufficiently explained such that this Court can meaningfully

review them if this case returns to us on appeal, *Woodington*, 288 Mich App at 357.

Vacated and remanded. We do not retain jurisdiction.

/s/ Brock A. Swartzle
/s/ Colleen A. O'Brien
/s/ Mariam S. Bazzi